# MEMORANDA

EDITH KELLY GOULD, Plaintiff, *v.* FRANK JAY GOULD, Defendant.

Supreme Court, New York Special Term, February, 1922.

*Husband and wife — divorce — validity of former French decree between parties.*

MOTION to vacate judgment in defendant's favor and to serve an amended reply.

*Jenks & Rogers* and *Eugene E. Sperry*, for plaintiff.

*Leonard & Walker*, for defendant.

MULLAN, J. The plaintiff sued for a divorce. The defendant for answer set up in bar, among other defenses, a decree of divorce obtained by him against the plaintiff in France. The defendant thereupon procured an order directing a reply to the defense based upon the French decree. The plaintiff in her reply admitted the regularity of the conduct of the French proceedings, but asserted that the French decree was devoid of extraterritorial validity, or, at least, that it was not binding in the state of New York, where the parties were at the time domiciled. Defendant moved for and obtained judgment on those pleadings. The plaintiff now by new counsel moves for an order vacating the judgment and giving plaintiff leave to serve an amended reply containing allegations that assail and put in issue the regularity, previously admitted, of the French proceedings. I shall consider first, discussing them for brevity as if they constituted one point, the two points made, *in limine*, by defendant's counsel, (1) that the papers do not disclose a meritorious case in plaintiff, and (2) that the papers do show that the action was brought, and that this motion was made in bad faith. Before this action was commenced, an attorney then acting for the plaintiff, but not now representing her, wrote a letter to another member of this bar, who theretofore had acted frequently as legal adviser of the defendant, in which, after saying that a complaint in a (this) divorce action had been prepared, and that the French decree obtained by the defendant would not be recognized in this country, he proceeded as follows: " Gould offered his wife 500,000 francs by way of settlement over in Paris a few months ago, which, of course, was a ridiculous offer, with francs selling at the rate of 12 francs to the dollar. But, if he chooses to have a

really proper dissolution of the marriage by a divorce that is good the world over, which you and I could arrange, I think Mrs. Gould would make no objection if he gave her about $250,000. As his income is $1,100,000, she tells me, he ought to be perfectly willing to do it, especially in view of the fact that he gave her two magnificent presents during their marriage which he never consummated; one of his Louisiana lands, which he afterwards sold for a million dollars, and one of his French estates of which he never gave her the deed. I hope you will be able to do something about it. He is so foolish, if he is through with her, not to be legally through with her and make a fresh start. Where there is such a large fortune $250,000 is nothing. I should think he would be proud to do it. You can remind him that by doing it now, he saves practically sixty per cent of it on his income tax." After the judgment for the defendant had been entered in the present action, Mrs. Gould dismissed the attorneys who had until then represented her, and the attorneys now appearing for her were substituted in their stead. Mrs. Gould was abroad at the time, and in connection with the substitution of attorneys, she cabled as follows to a woman friend who was acting here in her interest as attorney in fact: " Cannot afford proceed case unless on results like  *  *  * [naming the attorney who had written the letter quoted from above] who must give up case. You have my full authority to fix with both, dear. Cabling  *  *  * [the attorney referred to] for extension. Meantime love." In seeking to reach the meaning of that letter and cablegram it may be helpful to discover what light, if any, the papers shed upon the plaintiff's character and thus upon her possible motives. The defendant in his answer, and in his supporting affidavits, charges that after the plaintiff left his home in France she lived for about a year, apparently openly, in Paris as the mistress of one Mario Casasus. This charge is supported by proofs so convincing as to make a failure to controvert or impeach them a tacit admission of their truth. The proofs are made by way of authenticated copies of the record of the trial of the plaintiff and Casasus for the crime of adultery before the Court for Dealing with Misdemeanors, Tenth Division, sitting in Paris. From them it appears that on September 3, 1918, the police officials, under order of an investigating magistrate, went to an apartment in a house at No. 4 Square Thiers, Paris, and discovered the plaintiff and Casasus *flagrante delicto;* that the plaintiff and Casasus were arrested and taken before the investigating magistrate; that after having been questioned by the magistrate Casasus signed the following confession: " Mario Casasus, born in Mexico on the 16th day of June, 1894, of Joachim and of Cataline Altamirado, unmarried, a Mexican subject, first

lieutenant entrusted with the Supply Service of the American General Headquarters: I live at 4 Rue Thiers. I admit that Mrs. Gould has been my mistress for about a year past, date on which I made her acquaintance. I was aware that she was married. I sign after having read the foregoing; " that, after having been questioned by the magistrate, the plaintiff signed the following confession: " My name is Edith Kelly, Mrs. Gould, born in London on the 9th day of November, 1887, of Arthur and of Mathilda Davis, married on the 29th day of October, 1908, to Frank Gould; without children; an American subject by marriage; without profession. I reside at 4 Square Thiers since fifteen days ago, in an unfurnished apartment of a monthly rental of one thousand francs. It is Mr. Casasus who provides for my needs at the present time, my husband not having given me any sum since my separation. I admit that I have relations with Mr. Casasus, dating from the said time; " and that on October 26, 1918, the plaintiff and Casasus were convicted of adultery and were punished by fines. It was for the plaintiff's misconduct with Casasus that the defendant procured his French decree of divorce. It should go without saying, perhaps, that not even such apparently unimpeachable evidence of the plaintiff's guilt would necessarily control this court in determining whether or not she could successfully meet the charge of her guilt. It would be open to the plaintiff to assert that the records of the French criminal court were not copied accurately, or to deny that she was ever tried for or convicted of adultery, or to deny that she ever committed adultery. But, although she has had the fullest opportunity, she has not seen fit to say a single word in her defense, but is content to rest her case upon highly technical points of law involving the jurisdiction of the French courts and the regularity of the French divorce proceedings, thus depending upon what the average lay woman must, in all probability, regard as mere " attorney logic," as Carlyle has called it. An innocent woman is not to be expected to relinquish any rights she may possess, however technical, but she would run barefoot over naked swords to vindicate her honor, assailed as plaintiff's honor has been here assailed. At least, she would be abnormal if she failed to avail somehow, sometime, of the opportunity she has had here to deny the highly circumstantial charges of her guilt. I think it is impossible to read the papers that are before me on this motion without reaching the conclusion that the plaintiff cannot prevail in this action, regardless of the view the appellate courts of this state may take concerning the validity of the French decree obtained by the defendant. Moreover, I am convinced that the plaintiff has realized all along that her own conduct has made it impossible for her to succeed in

this action, and that the limit of her hope is to coerce the defendant into purchasing the nuisance value she possesses while there remains any possible ground for a holding that the French decree either is without validity at all or is without validity in this state. Accordingly I find and decide that the motion is not made in good faith and that the plaintiff has not a meritorious cause. Assuming, however, that there could be deemed room for a difference of opinion concerning the grounds for denial already discussed, I shall consider the motion on its merits. The ground upon which the vacatur is sought is that plaintiff's counsel desire to avail of a ground of attack upon the French decree that was overlooked by plaintiff's former counsel, who drafted the reply that was one of the pleadings upon which the defendant recovered judgment. Ordinarily such an oversight of former counsel would not justify a court in vacating a decree, but I am of the opinion that in a matrimonial action the interest and concern of the state are sufficient to justify the exercise of an unusual liberality in permitting parties to correct errors, however occurring, in order that the ultimate decision shall be upon the merits. The French decree in Mr. Gould's favor was made on April 16, 1919, by Le Tribunal Civil de Jugement, Premiere Instance de Versailles (Seine-et-Oise), a court concededly competent to render judgment if the parties litigant were properly before that court and subject to the jurisdiction of French tribunals. Upon a rehearing of the original issue (Mr. Gould's charges against Mrs. Gould) and a hearing of new issues (Mrs. Gould's charges against Mr. Gould), procurred at the instance of Mrs. Gould, a further decree was rendered by the same court on December 9, 1919, nonsuiting Mrs. Gould and affirming the prior judgment in favor of Mr. Gould. Mrs. Gould then appealed to La Cour d'Appel de Paris, Premiere Chambre, which court on July 7, 1920, rendered judgment confirming the judgment of the court below. Thereafter and in or about September, 1920, Mrs. Gould filed with La Chambre des Requetes de la Cour de Cassation a petition for leave to take an appeal from the judgment of the Cour d'Appel to the Cour de Cassation, the highest court in France. On December 8, 1920, the Cour de Cassation rejected the appeal. The French Civil Code (§ 251) requires a transcription on the registers of civil status of the enacting part of a judgment of divorce, the transcription to be accompanied by a certificate that no appeal has been taken from the judgment. Section 252 provides that such divorce is considered null and void if the parties have omitted to cause the transcription to be made within a period of two months from the day upon which it has become final. A transcription, the form and contents of which are not assailed by plaintiff's counsel in this present action, was made on January 12, 1921.

That transcription is the only transcription made in the course of the entire litigation. Concededly, if the judgment of the Cour de Cassation were final and regular, the transcription was timely. The defendant submits the opinions of highly qualified experts in French law to the effect that an appeal from a divorce decree to a higher court automatically acts as a stay of the judgment of the lower court, and that a transcription cannot be made while an appeal is pending. The plaintiff does not admit, in terms, the correctness of those statements of the procedural law of France, but studiously avoids the making of any denial that such is the law. One of those whose opinions were so submitted by the defendant is the distinguished and internationally known French advocate, M. Rene Viviani, ex-premiere of France. Another is Mr. Frederic R. Coudert, whose firm has had a Paris office for many years. Another is Mr. Emile Hannon, who has practiced law in the courts of France for thirty years. At least, in the absence of any contrary opinion, I think I may safely consider that it has been sufficiently proved for all the purposes of this motion that a transcription cannot be filed while a timely appeal is pending. It is the plaintiff's contention (1) that the petition of Mrs. Gould to the Cour de Cassation was not an appeal within the meaning of the statute, but was merely a request for leave to appeal, and that the decision of the Cour de Cassation denying Mrs. Gould's petition was not a judgment in the sense in which that term is used in the Civil Code; (2) that, if it be conceded for the sake of argument that that decision was in form a judgment, there is no proof submitted by Mr. Gould that the petition of Mrs. Gould for leave to appeal to the Cour de Cassation was made within two months from the rendition of the judgment of the Cour d'Appel, rendered on July 7, 1920, the allegation of Mr. Gould in his amended answer being merely that the petition was filed " in or about the month of September, 1920; " and (3) that the present state of the pleadings does not permit of advantage being taken by the plaintiff of the points made by her in respect of the timeliness of the transcription. As to the character of Mrs. Gould's petition and the decision of the Cour de Cassation thereon, Messrs. Viviani, Coudert and Hannon state that under French law that petition to appeal was an appeal, carrying a stay, and that that decision was a final judgment and not the decision of a mere motion. While refusing to accept these opinions, plaintiff's counsel content themselves with arguing, without the statement of any authority, that the decision by the Cour de Cassation should be regarded as the equivalent of a denial of a motion made to our Court of Appeals for leave to appeal to that court. The argument of plaintiff's counsel on this head is

singularly unconvincing. While appearing to oppose the opinions of the defendant's experts, the correctness of the statement of law made by these experts is not challenged by the presentation of any proofs to the contrary. Plaintiff does submit affidavits by one of her attorneys and of an employee in the office of plaintiff's attorneys, both of whom have studied (seemingly not in France) French law, but neither of whom has been admitted to practice in France. Not only are those affidavits barren of any enlightenment upon the points here actually in question, but my careful examination of them has failed to discover even a reference to such points. They contain the suggestion, none too worthily made, I think, that M. Viviani has not been shown to be qualified to express an opinion upon French law, and they call attention to the fact that M. Viviani's statement of opinion is not verified. It would seem that if these affiants were familiar with French practice they would have contradicted the statement of M. Viviani that a French avocat is not permitted, under the ethical practice of the profession as it happily obtains in France, to make an affidavit "at any time or place with regard to any proceeding in the courts," had there been any warrant for such a contradiction. Not only should the uncontradicted opinion of Messrs. Viviani, Coudert and Hannon as to the nature and effect of the decision of the Cour de Cassation be accepted, but it would seem, if our courts could construe for themselves section 251 of the Civil Code, that no other opinion was possible. I decide that the judgment of the Cour de Cassation was a final judgment under the French law. It remains to consider whether there is any reasonable ground for a belief that the judgment of the Cour d'Appel became void, prior to the judgment of the Cour de Cassation, because of the lapse of more than two months between the rendition of judgment by the Cour de'Appel and Mrs. Gould's appeal therefrom to the court of last resort. The plaintiff nowhere states that more than two months did in fact elapse. Her entire argument upon this head depends upon the failure of the defendant to allege affirmatively in his amended answer the exact date of the appeal. She does not suggest — although she must be at least equally well informed with defendant—what the real date of her appeal was. She desires merely to put defendant to proof that her own appeal was timely without furnishing or suggesting that she can furnish any evidence that her appeal was not timely. It must seem too plain to admit of a serious difference of opinion that it would be an abuse of discretion for a court to open up a decree, even in a matrimonial action, upon any such unsubstantial ground. But the defendant stands in no need of a decision on this head that rests wholly upon the negative inadequacy of plaintiff's stated ground. According to defendant's

expert, Mr. Hannon (M. Viviani's statement had been made before this point came up for consideration), the Cour de Cassation would not under the French practice and procedure have entertained Mrs. Gould's appeal had it not been timely nor would the officer in charge of the Record of Civil Status have received the several judgments for transcription unless they had been submitted in full compliance with the provisions of the Civil Code. Furthermore, the presumption of regularity that our courts accord to foreign judgments of superior courts removes any lingering vestige of doubt as to the regularity of the decree of the Cour de Cassation, which regularity necessarily includes the ability of that court to entertain the appeal. The motion is denied, with ten dollars costs.

Ordered accordingly.